it admit the correctness of any inference drawn by the pleader from the facts alleged."

It seems to me, therefore, that the demurrer must be sustained, with leave to plaintiff, however, to serve an amended complaint within 20 days upon payment of costs.

FARMERS' LOAN & TRUST CO. et al. v. NEW YORK ELEVATED R. CO. et al.

(Supreme Court, Appellate Division, First Department. May 17, 1912.)

1. EMINENT DOMAIN (§ 288*)—RAILROAD RIGHT OF WAY IN STREET—PRESCRIPTIVE RIGHT—CONSENT.

Where an elevated railroad company sought merely the consent of abutting property owners, as required by Const. art. 3, § 18, and Rapid Transit Act (Laws 1875, c. 606), providing that an attempt must be made to obtain such consent before application for the appointment of commissioners, and where it obtained consent fettered with a condition with which it wholly failed to comply in building the road, the road was deemed built without consent and in open hostility to any property right the abutting owners then had in the street; and hence the railroad company could acquire a prescriptive title to the use of the street as against abutting owners by the lapse of 20 years.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 783–788; Dec. Dig. § 288.*]

2. EMINENT DOMAIN (§ 288*)—RAILROAD RIGHT OF WAY IN STREET—CONSENT.

A petition signed by the owners of property abutting a street and addressed to the Supreme Court commissioners, and advocating a particular location for the elevated railroad in the street, not being a transaction to which the railroad company was a party, was not such a consent by the property owners as would prevent the railroad company's acquiring a prescriptive title to its use of the street as against the property owners.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 783–788; Dec. Dig. § 288.*]

Appeal from Special Term, New York County.

Action by the Farmers' Loan & Trust Company against the New York Elevated Railroad Company and others. From a judgment for plaintiffs, defendants appeal. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

J. Osgood Nichols, of New York City, for appellants.
J. W. Bormant, of New York City, for respondents.

SCOTT, J. This is the usual abutter's action against an Elevated Railroad Company, with the usual judgment for fee and rental damages.

[1] The action was not begun until more than 20 years after the construction and the commencement of the operation of the railroad, and the defense principally relied upon is that by virtue of the lapse of time the defendants have acquired a prescriptive title to the easements for the destruction of which damages are claimed. This plea would seem to be a conclusive answer to plaintiff's claim under the

principles laid down in Lewis v. N. Y. & Harlem R. R. Co., 162 N. Y. 202, 56 N. E. 540, and Hindley v. Manhattan Ry. Co., 185 N. Y. 335, 78 N. E. 276, but for a single circumstance which, it is insistently argued, serves to differentiate the present case from those cited. This circumstance is the fact that, before the construction of the railway, the company then about to erect it applied to the owners of the property in respect of which the plaintiff sues, and obtained from them or one of them a qualified consent to the erection. The property abuts upon the Bowery, a very wide street. The consent which was signed by one of its then owners was thus qualified "provided only that the road be erected in the center of the street." The road was not erected in the center of the street, but along the curb on either side. This entirely nullified the consent so that it became of no effect, and the company having refused to comply with its conditions, must be deemed to have built its road without the consent of the abutting owner. Shaw v. N. Y. Elevated R. R. Co., 187 N. Y. 186, 79 N. E. 984.

The case up to this point, therefore, is exactly as if the railroad company had constructed its road along the curb in front of the plaintiff's premises without any consent at all on the part of the owner. It is said, however, that defendant entered upon the abutters' easements in subordination to the title of the owner, because by the act of applying to the owners of the abutting property for their consent to the erection of the railway it recognized their ownership of easements in the street, and therefore, although it did not obtain an effective consent, it must be deemed to have erected its road in subordination to the owners' incorporeal interests in the street, and not in derogation of them. It is not to be presumed that either the owners or the railway company knew when the consent was applied for that the construction of the road would destroy or impair property rights in the street appurtenant to the abutting property and to which a money value would attach. Hindley Case, supra. It can scarcely be said therefore, with justice, that the company's application to the abutting owners for their consent to the building of the road involved a conscious recognition of the owner's street easements. Did it amount to such recognition as matter of law? What the railway company sought from the owners was not any portion of their property rights, but merely their consent which was required by the state Constitution (article 3, § 18), and the Rapid Transit Act (chapter 606, Laws 1875). By the terms of the act (section 4), it was necessary that an attempt should be made to obtain the consents of the abutting owners before application could be made to the General Term for the appointment of commissioners, and the act of the company in applying to plaintiff's predecessors in title for a consent should, in my opinion, be given no greater significance than to be regarded as an admission that the persons applied to were owners of property "bounded on" the street. It certainly should not be treated as a recognition of property rights at that time undreamed of. The paper signed in behalf of the owners of the property either was a consent or was not. Since it was fettered with a condition to which

135 N.Y.S.—30

the company never acceded, it certainly was not a consent, and the road was not built under it. Shaw Case, supra. Consequently the road was built without the consent of the owners of the abutting property, and in open denial of and hostility to any property rights which said owners then had in the street. In my opinion the case is not to be distinguished in principle from the Hindley and Lewis Cases. ·

[2] The petition signed by some of the owners of the property and addressed to the Supreme Court commissioners advocating a particular location for the road was not a transaction with the company, but simply an appeal to the discretion of public officers not representing nor controlled by the company. Koehler v. N. Y. El. R. R. Co., 9 App. Div. 449, 41 N. Y. Supp. 209, affirmed 159 N. Y. 218, 53 N. E. 1114. It did not operate as a consent by the property owner, and, since the company was not a party to it, certainly did not amount to a recognition by the company of any rights of any one.

In my opinion the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.